**IN THE UNITED STATED DISTRICT COURT**
**IN AND FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

LIVE THE LIFE MINISTRIES, INC.,

          Plaintiff,

vs.                                      **CASE NO. 4:11-cv-00194-RH-WCS**

THE PAIRS FOUNDATION, INC.;
and PAIRS, LTD.

          Defendants.
_____/

THE PAIRS FOUNDATION, INC.;
and PAIRS, LTD.

          Counter Plaintiffs

vs.

LIVE THE LIFE MINISTRIES, INC., and
  RICHARD J. ALBERTSON, Individually

          Counter Defendants,

_____/

## ANSWER AND COUNTERCLAIM

    Defendants, The Pairs Foundation, Inc., and Pairs, Ltd. (collectively, the "Pairs Entities")

hereby answers Plaintiff, Live the Life Ministries, Inc.'s ("Live the Life") Complaint.

### Jurisdiction and Venue

    1.     Admitted.

2.      Admitted.

3.      Denied.  PAIRS, Ltd. has been merged into The PAIRS Foundation, Inc., with The PAIRS Foundation, Inc. as the surviving entity.

4.      Admitted.

5.      Admitted.

**Background**

6.      Without knowledge and therefore denied.

7.      Admitted.

8.      Admitted.

9.      Defendants admit that Mrs. Gordon authored materials in the field of relationship skills as an employee of the Pairs Entities.  Defendants deny that Mrs. Gordon was authorized to obtain copyright registrations in her individual name.

10.     Defendants admit that Live the Life has developed program materials under the names "Start Smart" and "Adventures in Marriage."  Defendants are otherwise without knowledge and the remaining allegations in this paragraph are denied.

11.     Without knowledge and therefore denied.

12.     Without knowledge and therefore denied.

13.     Without knowledge and therefore denied.

14.     Without knowledge and therefore denied.

15.     Without knowledge and therefore denied.  Defendants deny that Mrs. Gordon was authorized to obtain copyright registrations for these works in her individual name.

16.     Without knowledge and therefore denied.  Defendants deny that Mrs. Gordon was authorized to obtain a copyright registration for this work in her individual name.

17.     Defendants are without knowledge as to when Live the Life obtained a copy of the Gordon Charitable Trust and as to what was attached, therefore denied.

18.     Admitted.

19.     Defendants admit that The PAIRS Foundation, Inc., owns the intellectual property rights in the PAIRS curriculum and in the PAIRS short programs, otherwise denied.

20.     Without knowledge and therefore denied.

21.     Defendants admit that Exhibit 3 to the Complaint contains communications from Defendant to Plaintiff, otherwise denied.

22.     Defendants admit that they have demanded that Live the Life cease and desist from infringing Defendants' intellectual property rights in PAIRS curriculum, otherwise denied.

23.     Denied.

24.     Without knowledge and therefore denied.

## VERIFIED COUNTERCLAIM

Defendants, The PAIRS Foundation, Inc., and PAIRS, Ltd. (collectively, "PAIRS"), bring this counterclaim against Plaintiff/Counter Defendant Live the Life Ministries, Inc. ("Live the Life") and Counter Defendant Richard J. Albertson ("Albertson") and allege:

## Nature of the Case

1.     This is a civil action seeking damages and injunctive relief for:

a.     Breach of contract;

b.     Copyright infringement under United States Copyright Law (17 U.S.C. sec. 101 *et seq.)*; and

c.     Declaratory relief related to certain license agreements.

## The Parties

2.      The PAIRS Foundation, Inc., is a Florida, not for profit corporation, with its principal place of business in Weston, Florida.  PAIRS, Ltd., is a Virginia, not for profit corporation, that has been merged into The PAIRS Foundation, Inc.

3.      Live the Life is a Florida corporation with its principal place of business in Tallahassee, Florida.

4.      Richard J. Albertson is the President of Live the Life and is the corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the actions of Live the Life.

## Jurisdiction and Venue

5.      This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. sec. 1331 and 1338 by virtue of the United States Copyright Act, 17 U.S.C. sec. 101 *et seq.*

6.      This Court has supplemental jurisdiction over the state law claim raised herein pursuant to 28 U.S.C. sec. 1367 because the state law claim is so related to the original jurisdiction federal claim raised herein that it forms a part of the same case or controversy under Article III of the United States Constitution.

7.      This Court has personal jurisdiction over Counter Defendant Albertson as he is a resident of this judicial district.

8.      Venue is proper in this District pursuant to 28 U.S.C. sec. 1391(b)(1), as a substantial part of the events giving rise to the claim occurred within this judicial district.

9.      This case is appropriately heard in the Tallahassee Division of the Northern District of Florida pursuant to N.D. Fla. Loc. R. 3.1(A)(1).

10.     All conditions precedent to the maintenance of this cause have been performed or have occurred.

**Background Facts**

11.     PAIRS was founded in 1983 by Mrs. Lori Gordon, and her now deceased husband, Rabbi Morris Gordon.  PAIRS is an acronym for "Practical Application of Intimate Relationship Skills."  Mrs. Gordon is the author of numerous works in the field of relationship skills.

12.     The original PAIRS materials were created and first published in 1988.  The copyright for these materials (Registration Number:  TX0002422429 dated June 30, 1988) is owned by PAIRS.  A training manual and curriculum guide were developed and first published in 1989.  The copyright for these materials (Registration Number:  TX0002641343. dated May 9, 1989) is owned by PAIRS (hereinafter, the "Original PAIRS Materials").  A copy of applicable registration information is attached as Exhibit A.

13.     Mrs. Gordon was the President of PAIRS from its founding until June 2008.  During this period, Mrs. Gordon, as a PAIRS employee, authored both the Original PAIRS Materials and derivative works thereof.

14.     In 2008, Seth Eisenberg succeeded Mrs. Gordon as PAIRS' President.   As an employee of PAIRS, he also has developed derivative works that are based on the Original PAIRS Materials.  These derivative works are typically workbooks and/or other training materials for workshops or classes of varying length and complexity.  An example of such a work is attached as Exhibit B.

15.     Since its inception, PAIRS' mission has been to deliver knowledge and practical tools to help people create, nurture, resuscitate, and rekindle relationships.  PAIRS has created a

network of professionals that are trained to understand and teach the PAIRS materials.  Through this network, PAIRS has delivered its concepts, materials, and methods to people throughout the world.

16.     To control the quality of PAIRS' training, PAIRS requires that providers of PAIRS' training complete a rigorous, four-day program as a condition precedent to certification as a PAIRS provider.  Further, PAIRS requires its providers to enter into a license agreement that restricts and controls the use of PAIRS' materials and PAIRS' trademarks.

17.     At no time did PAIRS authorize any person, including Mrs. Gordon, to apply for, own, or obtain a copyright registration, in her individual name, in the Original PAIRS Materials or any derivative work based on the Original PAIRS Materials.

18.     In October 2006, Live the Life was awarded a grant under the Healthy Marriage Initiative from the United States Department of Health and Human Services Administration for Children and Families ("HHS/ACF").  Under this grant, Live the Life was obligated to provide certain marriage related training.  Live the Life requested that PAIRS provide the required training materials and training system.

19.     Albertson is the President of Live the Life and is responsible for, and directs and controls the actions of Live the Life.

20.     In order for Live the Life to meet its obligations under the HHS/ACF grant, on or about November 30, 2006, Live the Life and PAIRS entered into a Capacity Building Training and Service Agreement ("CBTSA").  A copy of the CBTSA is attached as Exhibit C.  Under the CBTSA, PAIRS agreed to train Live the Life staff members in the PAIRS system.  Further, PAIRS agreed to provide certain PAIRS materials at a specified cost per copy of material.  These materials are:

    a.    *PAIRS for LIFE Marriage Education Course* (18 hour curriculum), $36 per participant;

    b.    *PRE-PAIRS* Pre-Marital Education Course (5 hour curriculum), $15 per participant; and

    c.    *PAIRS for PEERS* Basic Ten Relationship Skills Course - High School (10 session curriculum), $25 per participant

21.    The CBTSA includes a Licensing Agreement (Exhibit B to the CBTSA, hereinafter, the "License Agreement") under which Live the Life is granted certain rights to use PAIRS intellectual property, including PAIRS' copyrights.  The License Agreement specifically prohibits Live the Life from reproducing, storing electronically, or translating PAIRS materials without PAIRS written authorization.  (License Agreement, Sec. 1, ¶ 3; Sec. 2, ¶ 3).

22.    Further, the License Agreement provides in Section 1, paragraph 8:

> You have no right, title or interest in any of the PAIRS' trademarks, copyrighted materials, curricula or materials excerpted, translated or derived from PAIRS except in connection with activities authorized and described in this Agreement.

23.    Under the License Agreement, Live the Life was required to annually renew its license to use PAIRS materials and teach the PAIRS program.  (Sec. IV; ¶ 1).   Further, in section IV, paragraph 3 of the License Agreement, Live the Life agreed that it would not compete with PAIRS.  This section provides:

> During the term of this Agreement, and for two years after the effective date of termination of this Agreement, you agree not to participate directly or indirectly in development and/or marketing of courses or course materials based in whole or in part upon the original materials and sequenced concepts contained within PAIRS Curricula, or in competition with the PAIRS Programs.  Your use of specific elements in the PAIRS curricula, which you can concretely demonstrate you learned via previous trainings in other programs of relationship education, would be excluded from this prohibition.

24.     On February 29, 2008, Albertson formally requested permission from PAIRS to use two elements from the PAIRS Curricula in Live the Life's "*Smart Start*" pre-marital training materials that it was developing.  A copy of the email making this request is attached as Exhibit D.  At that same time, Live the Life provided a draft copy of the *Smart Start* training materials which incorporated the requested PAIRS elements.  A copy of the portion of these training materials incorporating PAIRS Curricula is attached as Exhibit E.

25.     Because Albertson's request was inconsistent with the License Agreement, PAIRS denied his request to use these two elements of the PAIRS Curricula in Live the Life's *Smart Start* program.  Further, PAIRS reminded Live the Life that it was obligated under the License Agreement not to compete with PAIRS.

26.      At or about this time, Live the Life was developing at least two training programs that compete with PAIRS Programs.  These programs include *Smart Start*, a pre-marital program that competes with *PRE-PAIRS*, and *Adventures in Marriage*, a marriage education program that competes with *PAIRS for Life* and/or *PAIRS Essentials.*

27.     At the time that Albertson and Live the Life were developing *Smart Start* and *Adventures in Marriage*, as PAIRS' licensees, they had access to the full range of PAIRS' Curricula, and were provided PAIRS' Curricula in both paper and electronic formats.  Specifically, Albertson and Live the Life had access to *PAIRS Live the Life* and *PAIRS Essentials.*

28.     Notwithstanding PAIRS refusal to allow Live the Life to incorporate PAIRS Curricula in Live the Life developed training materials, and notwithstanding the clear prohibitions in the License Agreement to the contrary, Albertson directed Live the Life to

continue to develop training materials that both incorporated PAIRS materials and are competitive to PAIRS materials.

29.     On information and belief, beginning on or about May of 2009, Albertson directed Live the Life to publish and distribute *Smart Start* training materials containing at least the two elements of the PAIRS Curricula that Albertson had been denied permission to include in *Smart Start*.

30.     Recognizing that Live the Life did not have the necessary authority to incorporate PAIRS materials in *Smart Start*, Albertson surreptitiously concocted a scheme to "end run" PAIRS.  This scheme involved entering into license agreements with Mrs. Gordon that purport to grant Live the Life the permissions that were denied by PAIRS.

31.     The first license agreement between Live the Life and Mrs. Gordon was executed on June 26, 2009 ("First Gordon License").  The First Gordon License purports to grant Live the Life the right to use the PAIRS materials requested in February 2008.  Moreover, this license significantly reduced the cost to Live the Life for the use of this PAIRS' material.

32.     Live the Life's *Start Smart* training materials directly incorporate PAIRS materials, PAIRS' sequenced concepts, and PAIRS' selection, coordination and arrangement of materials.  Below is a side-by-side comparison of two pages from the 2008 version of *PAIRS Essentials* and from Live the Life's *Smart Start*.

| From *PAIRS Essentials* 2008 | From Live the Life's *Smart Start* |
|---|---|

## From *PAIRS Essentials* 2008

**DTR FOR NURTURING RELATIONSHIPS**

**NOTES:**

*The* ***DAILY TEMPERATURE READING****, also known as the "****DTR****," is a tool for watering the garden of your most important relationships. With practice, the DTR becomes a habit, making it natural to look for — and express — appreciations to one another, keep each other up-to-date on the developments in our lives, ask questions about anything we're wondering about so we don't have to assume, express concerns or complaints directly along with specific requests for change, and talk about our individual and shared goals for the future. Many graduates have said using the DTR on a regular basis was the most important tool for creating and sustaining thriving relationships.*

session one

PAIRS PRACTICAL SKILLS FOR EMOTIONAL LITERACY

## From Live the Life's *Smart Start*

# DAILY TEMPERATURE READING

*"When we are listened to, it creates us, makes us unfold and expand."*
*Karl Menninger*

**Notes**

Used with permission from Dr. Lori H. Gordon, author of Passage to Intimacy and founder of PAIRS. For more information write to Dr. Gordon at 6509 Waterway Drive, Falls Church, VA 22044 or email pairsline@aol.com

## From *PAIRS Essentials* 2008

**GUIDE FOR CONFIDING ABOUT A COMPLAINT**

- Make sure you have enough time to give your undivided attention, which should be a minimum of ten to 15 minutes. Be fully present without distractions, with goodwill and empathy for each other.
- If you are the Speaker, use short sentences your partner can repeat back easily. Be aware of the intention behind your communication.
- As the Listener, repeat what you think you heard your partner say without exaggerating, using comments, distorting or giving advice. Remember, this is not a conversation; the Listener's role is to listen to understand and to tangibly, and empathically, let the Speaker know that the message you are receiving is the message the Speaker intends. Listening to understand is a gift to the relationship.
- Use non-verbal cues such as nodding your head and making eye contact to show you are listening and that you understand.
- Validate your partner's thoughts and feelings. The Listener's job is to help the partner feel understood; not to agree, comment, judge, try to fix the problem, or get into a discussion.
- After completing Talking Tips, you can discuss the issue, reverse roles, or simply complete the exercise with appreciation for the information, awareness, perspective and understanding shared.

session one

PAIRS PRACTICAL SKILLS FOR EMOTIONAL LITERACY

## From Live the Life's *Smart Start*

# DIALOGUE GUIDE

It is helpful to develop a healthy structure to discuss issues, because structure slows the conversation down and helps prevent the conflict from escalating. One way to provide that structure is to learn a vital communication skills using the Dialogue Guide.

> *"Being heard is so close to being loved that for the average person, they are almost indistinguishable."*
> *David Augsburger*

**HELPFUL HINTS:**

- Search for the "Us" in the issue/problem. "Us" is hard to find but ALWAYS there
- Listen solely to understand what your partner is saying and feeling
- Do not judge, advise or contradict what the other person is saying
- We are conditioned to think of our response while the other person is speaking – this is natural, but a major barrier to intimacy
- Learn to SILENCE your critical voice and focus ENTIRELY on what your partner is trying to tell you
- It takes practice to direct yourself to think ONLY about what your partner said – this allows you to hear things you have never allowed yourself to hear before
- Empathy means being able to feel what someone else is feeling
- Remember R.A.V.E.: Repeat, Affirm, Validate with Empathy
- When this kind of intimate listening occurs, it encourages feelings of appreciation, closeness, and love
- Being an active, involved listener means being fully attentive, without interrupting, and making sure you fully understand what is being said

NOTES:

 Used with permission from Dr. Lori H. Gordon, author of *Passage to Intimacy* and founder of *PAIRS*. For more information write to Dr. Gordon at 1056 Creekford Drive, Weston, FL 33326 or email pairsline@aol.com



33.     By letter dated November 9, 2009, PAIRS notified Live the Life that its *Smart Start* training materials violated numerous requirements of the CBTSA and its incorporated License Agreement.  PAIRS further requested an accounting of, and payment of, fees due under the License Agreement for the use of PAIRS' materials.  Finally, PAIRS reminded Live the Life of the contractual requirement to renew its license if it desired to continue to be a PAIRS provider.  A copy of this letter is attached as Exhibit F.

34.     On November 17, 2009, Live the Life and Mrs. Gordon entered into a license agreement stating that the agreement "modifies and replaces" the First Gordon License.   A copy of this license agreement is attached to Plaintiff's Complaint as Exhibit 1.

35.     On November 18, 2009, Live the Life renewed its license with PAIRS, thereby reaffirming Live the Life's obligations not to compete with PAIRS and not to use PAIRS' materials without PAIRS' permission.  A copy of Live the Life's renewal is attached as Exhibit G.  This renewal extended the term of the License Agreement through June 2, 2010 and extended Live the Life's contractual non-compete obligation through June 2, 2012.  *See, License Agreement*, Section IV.

36.     Because Albertson and Live the Life knew that PAIRS would not agree to the inclusion of PAIRS materials in *Adventures for Marriage*, Albertson concocted a second license agreement with Gordon.  On November 19, 2009, Live the Life entered into a second license agreement with Mrs. Gordon ("Second Gordon License").  The Second Gordon License purports to make Live the Life and Mrs. Gordon joint authors of Live the Life's *Adventures in Marriage* training materials and purports to give Live the Life the right to use PAIRS materials.   A copy of the Second Gordon License is attached to Plaintiff's Complaint as Exhibit 2.

37.     Another purpose of the Second Gordon License is to significantly reduce Live the Life's cost for training materials.  Under the CBTSA, Live the Life is obligated to pay PAIRS $36 per participant in the *PAIRS for Life* program.  Under the Second Gordon License, Live the Life is obligated to pay Mrs. Gordon $5 for every couple that purchases a copy of *Adventures in Marriage,* and $3 for each individual that purchases a copy of *Adventures in Marriage.*  Further, Live the Life pays nothing to Mrs. Gordon if it gives away copies of *Adventures in Marriage.*

38.     At the time that Live the Life entered into the First Gordon License, Albertson knew that PAIRS claimed proprietary rights in the materials purportedly licensed under the First Gordon License.

39.     At the time that Live the Life entered into the First Gordon License, Albertson knew that PAIRS claimed copyright rights in the materials purportedly licensed under the First Gordon License.

40.     At the time that Live the Life entered into the Second Gordon License, Albertson knew that PAIRS claimed proprietary rights in the materials purportedly licensed under the Second Gordon License.

41.     At the time that Live the Life entered into the Second Gordon License, Albertson knew that PAIRS claimed copyright rights in the materials purportedly licensed under the Second Gordon License.

42.     Prior to filing its Complaint, neither Albertson nor Live the Life provided PAIRS with a copy of the First Gordon License or the Second Gordon License.

43.     Live the Life's *Adventures in Marriage* program is offered by Live the Life in lieu of PAIRS' *PAIRS for Life* and *PAIRS Essential* programs.

44.    The *PAIRS for Life* participant handbooks in Live the Life's possession contain a copyright notice identifying PAIRS, not Mrs. Gordon, as the copyright owner.  The *PAIRS Essential* participant handbooks in Live the Life's possession contain a copyright notice identifying PAIRS, not Mrs. Gordon, as the copyright owner.

45.    Beginning in 2010, Live the Life ceased providing any PAIRS programs.  At least as early as that time, Live the Life was providing its competing *Start Smart* and *Adventures in Marriage* programs.  A comparison showing some of the use of PAIRS' materials is below.

| From *PAIRS Essentials*  2008 | From Live the Life's *Adventures In Marriage* |
| --- | --- |
|  | |

| From *PAIRS Essentials* 2008 | From Live the Life's *Adventures In Marriage* |
|---|---|
|  | |

46.   In addition to directly copying PAIRS' materials, Live the Life also copied the sequenced concepts included in the PAIRS' materials and the selection, coordination, and arrangement of PAIRS' materials.

47.   Live the Life conducts "Adventures in Marriage Certification Training" programs throughout Florida.  A copy of an advertisement for such a training program is attached as Exhibit H.

48.   Since at least as early as May 2009, Live the Life has developed and marketed courses that are based at least in part on the Original PAIRS Materials and sequenced concepts within the PAIRS Curricula, and that directly compete with PAIRS Programs.

49.     On information and belief, Live the Life has licensed third parties to reproduce and distribute works containing PAIRS materials.

50.     On information and belief, Live the Life is providing its *Smart Start* and *Adventures in Marriage* materials to third parties without any restrictions on those third parties' ability to reproduce, distribute, and use the materials.

51.     As a result of Live the Life and Albertson's actions, training materials incorporating PAIRS' materials and sequenced concepts are available to third parties at little or no cost, are being used by people with little or no training in the PAIRS' method, and are displacing PAIRS materials and training in the marketplace.

52.     The license agreements between Mrs. Gordon and Live the Life are ineffective as Mrs. Gordon did not have the authority to grant the licenses.

53.     Even if effective, the First Gordon License and the Second Gordon License do not license the uses actually made, and do not and cannot affect Live the Life's contractual obligations to PAIRS established in the CBTSA.

54.     There is a present dispute and controversy regarding the legal effect of the First Gordon License and the Second Gordon License, and the parties' rights thereunder.

### Count I – Breach of Contract

55.     PAIRS incorporates by reference paragraphs 1 through 54.

56.     PAIRS and Live the Life are parties to the CBTSA and its incorporated License Agreement.

57.     PAIRS has fully performed all of its material obligations under the CBTSA.

58.      Live the Life has breached the CBTSA by, *inter alia*:

   a.      failing to pay required fees;

      b.      developing and marketing courses or course materials based in whole or in part upon the original materials and sequenced concepts contained within PAIRS Curricula;

      c.      developing and marketing courses or course materials in competition with the PAIRS Programs;

      d.      reproducing, distributing, and licensing the use of PAIRS Curricula without authority or permission to do so.

59.    PAIRS has been damaged by these breaches.

60.    PAIRS has a substantial likelihood of succeeding on its claim that Live the Life breached the CBTSA.

61.    PAIRS has suffered irreparable harm in that Live the Life has, without authority, used and commercially exploited PAIRS' intellectual property, has failed to provide proper attribution of PAIRS' ownership and retention of rights in this intellectual property, has unfairly and deceptively competed against PAIRS using PAIRS' own materials.

62.    PAIRS has no adequate remedy at law.

63.    The public interest will be served if Live the Life is enjoined from any continuing or further breaches of the CBTSA.

WHEREFORE, Counter-Plaintiff, PAIRS, demands judgment against Defendants, Live the Life and Albertson providing for:

      a.      An accounting of all uses made by Live the Life of PAIRS' intellectual property, including but not limited to PAIRS' trademarks, copyrights, and Curricula, including an identification of all third parties to whom Live the Life and/or Albertson have distributed PAIRS' property, and including an

accounting of all grant monies and contributions received by Live the Life/Albertson in connection with conducting classes and trainings using materials containing PAIRS property;

b.    Damages caused by Live the Life's breach of the CBTSA;

c.    Entry of preliminary and permanent injunctions enjoining Live the Life, its agents, servants, employees, and attorneys as well as any person or entity acting in concert or participation with them from making any use of PAIRS' Curricula, training materials, copyrights, and trademarks; and mandating Live the Life, its its agents, servants, employees, and attorneys as well as any person or entity acting in concert or participation with them to surrender and return to PAIRS all PAIRS' materials;

### COUNT II – Copyright Infringement

64.    PAIRS incorporates by reference paragraphs 1 through 54.

65.    PAIRS is, and at all times relevant has been, the owner of United States Copyright Registrations numbers:  TX0002422429, dated June 30, 1988 and TX0002641343, dated May 9, 1989 (the "Copyrights").

66.    PAIRS is the owner of the copyright is various derivative works based on the Copyrights, including but not limited to *PAIRS Essentials*, attached hereto as Exhibit B.

67.    PAIRS, through the CBTSA, granted Live the Life certain, limited rights with respect to the PAIRS Curricula.  PAIRS retained all ownership and copyright in and to this Curricula.

68.    Live the Life has infringed the Copyrights by, *inter alia,* reproducing and distributing the PAIRS Curricula without the authority or permission to do so.

69.     PAIRS is informed and believes that the foregoing acts of infringement have been willful and intentional, in disregard and in indifference to PAIRS' rights.

70.     As a result of its wrongful conduct, Live the Life is liable to PAIRS for copyright infringement.  17 U.S.C. sec. 501.  PAIRS has suffered damages.  PAIRS is entitled to recover damages, which include any and all profits Live the Life has made as a result of its wrongful conduct.  17 U.S.C. sec. 504.  Alternatively, PAIRS may be entitled to statutory damages under 17 U.S.C. sec. 504(c).

71.     Additionally, because Live the Life's infringement has been willful within the meaning of the Copyright Act, any award of statutory damages should be enhanced in accordance with 17 U.S.C. sec. 504(c)(2).

72.     The conduct of Live the Life, and those working in concert with Live the Life, is causing, and unless enjoined and restrained by this Court, will continue to cause PAIRS great and irreparable injury that cannot be fully compensated or measured in money.  PAIRS has no adequate remedy at law.  Pursuant to 17 U.S.C. sec. 502 and 503, PAIRS is entitled to injunctive relief prohibiting Live the Life from further infringing PAIRS' copyrights.

73.     PAIRS is also entitled to recover its attorney's fees and costs of suit.  17 U.S.C. sec. 505.

74.     Pursuant to 17 U.S.C. sec. 504, PAIRS is entitled to recover any and all profits of Defendant that are attributable to its acts of infringement, as well as actual or statutory damages.

75.     The amount of money due from Counter-Defendants to PAIRS is unknown and cannot be ascertained without a detailed accounting by Counter-Defendants of the precise number of units of infringing material reproduced, offered for distribution, and distributed by Counter-Defendants.

WHEREFORE, Counter Plaintiff, PAIRS, requests judgment against Counter-Defendants, Live the Life and Albertson, as follows:

a.     That Counter-Defendants have willfully infringed PAIRS' rights in the following federally registered copyrights under 17 U.S.C. sec. 501:

1.     TX0002422429; and

2.     TX0002641343

b.     For entry of preliminary and permanent injunctions enjoining Counter-Defendants, their agents, servants, employees, and attorneys as well as any person or entity acting in concert or participation with them from imitating, copying, or making any other infringing use or infringing distribution of PAIRS materials under these Certificate of Copyright Registrations:

1.     TX0002422429; and

2.     TX0002641343

c.     For entry of preliminary and permanent injunctions enjoining Counter-Defendants, their agents, servants, employees, and attorneys as well as any person or entity acting in concert or participation with them from engaging in any other activity constituting an infringement of any of PAIRS' copyrights, or of PAIRS' rights in, or right to use or to exploit these copyrights.

d.     For entry of preliminary and permanent injunctions enjoining Counter-Defendants, their agents, servants, employees, and attorneys as well as any person or entity acting in concert or participation with them from assisting,

aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs b. and d. above.

e.   For entry of preliminary and permanent injunctions requiring Counter-Defendants, their agents, servants, employees, and attorneys as well as any person or entity acting in concert or participation with them to return to PAIRS all PAIRS Curricula in Counter-Defendant's possession;

f.   That the Court enter an order requiring Counter-Defendants to provide PAIRS a full and complete accounting of all amounts due and owing to PAIRS as a result of Defendant's illegal activities;

g.   That the Court order Counter-Defendants to pay PAIRS' general, special, actual, and statutory damages as follows:

   1.   PAIRS' damages and Defendant's profits pursuant to 17 U.S.C. sec 504(b), or in the alternative, enhanced statutory damages pursuant to 17 U.S.C. sec. 504(c)(2), for Counter-Defendants' willful infringement of PAIRS' copyrights; and

   2.   that the Court order Counter-Defendants to pay to PAIRS both the costs of this action and the reasonable attorney's fees incurred by PAIRS in prosecuting this action.

   3.   that the Court grant to PAIRS such further relief as the Court deems just and proper.

**COUNT III – Declaration of Invalidity of Gordon Licenses**

76.   PAIRS incorporates by reference paragraphs 1 through 54.

77.    The First Gordon License is invalid because Mrs. Gordon did not have the authority to make the grant contained therein.

78.    The Second Gordon License is invalid because Mrs. Gordon did not have the authority to make the grant contained therein.

79.    The First Gordon License is invalid because the materials licensed are merely derivative of the Original PAIRS Materials.

80.    The Second Gordon License is invalid because the materials licensed are merely derivative of the Original PAIRS Materials.

81.    Accordingly, PAIRS is entitled to an order declaring that the First Gordon License and the Second Gordon License are invalid *ab initio*.


RESPECTFULLY SUBMITTED this 30th day of June, 2011.


  /William H. Hollimon/
WILLIAM H. HOLLIMON
Florida Bar No. 0104868
Hollimon, P.A.
118 N. Gadsden St.
Tallahassee, Florida   32301
Telephone:     850/320.8515
bill@hollimonpa.com
Attorneys for The PAIRS Foundation, Inc.

## VERIFICATION AND DECLARATION

I, Seth Eisenberg, President of The PAIRS Foundation, Inc. ("PAIRS"), hereby verify and declare under penalty of perjury that the factual allegations in the Verified Counterclaim filed herewith are true, accurate, and support Counter Plaintiff PAIRS' requests for relief.

Verified, declared, and signed this 30th day of June, 2011.

Seth Eisenberg
President, The PAIRS Foundation, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 30, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to parties of record:

Ruth E. Vafek
rvafek@ausley.com

and

Martin P. Sipple
msipple@ausley.com

/s/William H. Hollimon